IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES FLOYD THOMPSON,
    Plaintiff,

vs.                                       Case No. 3:07cv163/LAC/EMT

FEDERAL BUREAU OF PRISONS et al.,
    Defendants.
_____/

**ORDER**

       This cause is before the court upon Plaintiff's civil rights complaint filed under 28 U.S.C. § 1331 and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) (Doc. 1). Leave to proceed in forma pauperis has been granted (*see* Doc. 4).

       Upon review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief. The court will therefore allow Plaintiff an opportunity to correct the deficiency in an amended complaint.

       Plaintiff, an inmate of the Federal Prison Camp in Pensacola, Florida (FPC-Pensacola), names three Defendants in the action, Doctor Marcus Ramirez, Warden Scott Fisher, and the Federal Bureau of Prisons (BOP) (Doc. 1 at 1). Plaintiff claims that he has not received adequate medical care for his ocular disorder in violation of the Eighth Amendment (*id.* at 8). Plaintiff alleges that he suffers from Coats disease, an affliction that could lead to blindness (*id.*).[1] In 2005 and April of 2006, Plaintiff was referred by prison officials to a specialist in the field, who recommended laser photocoagulation (*id.*). Upon receipt of this recommendation, Defendant Dr. Ramirez, the clinical director at FPC-Pensacola, declined to approve laser surgery (*id.*). Plaintiff filed a grievance with Defendant Fisher, but Fisher denied the grievance on the ground that Plaintiff was being treated with

---

[1]The facts are derived from the "Statement of the Facts" section of Plaintiff's complaint (Doc. 1 at 8).

medication (*id.*). Plaintiff additionally states that he requested a second opinion, but his request was denied (*id.*). Plaintiff argues that denial of the operation could jeopardize his sight and is therefore a violation of his Eighth Amendment rights (*id.* at 9). As relief, Plaintiff seeks an injunction compelling the BOP to provide another medical opinion of the "risks and prognosis of [Plaintiff's] potential blindness" (*id.*). Furthermore, Plaintiff requests $1 million in damages from each of the individual Defendants, Ramirez and Fisher (*id.*).

Initially, Plaintiff has failed to state a basis for liability as to the BOP and Warden Fisher because he appears to sue them based solely on the fact that they are supervisors of Defendant Ramirez. Plaintiff is advised that supervisory officials are not liable in Bivens actions for the acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.' " *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1542 (11th

Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, as to Defendant Fisher and the BOP, Plaintiff alleges only that he filed a grievance with Fisher, and the grievance was denied. As discussed *supra*, this fact alone is insufficient to impose liability against Warden Fisher. Unless sufficient facts exist and are alleged that provide a basis for holding the supervisory Defendants liable for the alleged constitutional violations, Plaintiff should drop Warden Fisher and the BOP as Defendants.

Regarding Plaintiff's claim against Dr. Ramirez, Plaintiff is advised that medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment. *Id.* (citations omitted). Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000), *cert. denied*, 531 U.S. 1077, 121 S. Ct. 774, 148 L. Ed.2d 673 (2001). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation " 'denying the minimal civilized measure of life's necessities.' " *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed.2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. *Id.* at 1258. As to the objective prong, an objectively serious deprivation requires a showing of an objectively "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed.2d 251 (1976). A serious medical need is "one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed.2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires a showing that the response made by defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[2]

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris v. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

---

[2]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

In the instant case, Plaintiff contends that he is receiving inadequate medical care because he is being denied surgery and a second medical opinion. Plaintiff acknowledges, however, that he is receiving medication to treat his ailment, and the attached exhibits corroborate this. Furthermore, the exhibits appear to suggest that the contract ophthalmologist who recommended surgery stated that the contemplated surgery affords only "a slight chance of improved vision . . . since the retina is the main problem." (Doc. 1, Ex. B). The Utilization Review Committee of FPC-Pensacola considered the high risk of the surgery in conjunction with the low possibility of a successful result in denying Plaintiff's request for surgery (*id.*). Additionally, it appears that Plaintiff's condition is being controlled by the medication he is receiving. In sum, Plaintiff has failed to show that denial of a second medical opinion and surgery in these circumstances is violative of his Eighth Amendment rights, as Plaintiff has failed to establish that Defendants were deliberately indifferent to his medical needs.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Amended Complaint**." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named defendant is involved in each alleged constitutional violation, alleging the claims as to each defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular defendant harmed him, he should delete or drop that person as a defendant from his complaint. Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded. N.D. Fla. Loc. R. 15.1.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by federal prisoners in actions under 28 U.S.C. §1331 or 1346. This case number should be written on the form.

2.	Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written and submitted on the court form.  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

3.	Plaintiff's failure to file an amended complaint may result in a recommendation that this action be dismissed for failure to comply with a court order.

**DONE AND ORDERED** this 24th day of May 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**